Filed 12/3/12

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
    Plaintiff and Respondent, )
)         S186707
    v. )
)     Ct.App. 4/3 G040641
DOUGLAS GEORGE SCHMITZ, )
)       Orange County
    Defendant and Appellant. )   Super. Ct. No. 06HF2342
_____ )

This case involves the constitutional limits of a vehicle search based on a passenger's parole status. Here, an officer, aware that the front seat passenger was on parole, searched the backseat of defendant's car and recovered drugs and drug paraphernalia from a chips bag and a pair of shoes. Defendant, the driver, sought to suppress that evidence. We conclude that the search was reasonable under the Fourth Amendment to the United States Constitution. We hold that the Constitution permits a search of those areas of the passenger compartment where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity. Additionally, the officer may search personal property located in those areas if the officer reasonably believes that the parolee owns those items or has the ability to exert control over them.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Early in the evening of November 24, 2006, Deputy Sheriff Mihaela Mihai saw defendant's car turn into a dead-end alley lined with the garages of a

1

condominium complex. When defendant then made a U-turn, Mihai stopped alongside his car and asked whether he was lost. Defendant said no, that he had driven into the alley to avoid making a U-turn on the street. Mihai got out of her car and asked defendant for his driver's license. As defendant complied, Mihai observed that his arms were covered with abscesses, which she associated with drug use. Asked if defendant was on probation or parole, defendant said, "No." Mihai then asked him for permission to search the car. Defendant did not respond.

Defendant had three passengers: a man in the front seat, and a woman and her small child in the back. The male passenger said he was on parole. Mihai searched the car on that basis after removing the occupants. In the backseat area, she found a syringe cap in a woman's purse,[1] two syringes in a chips bag, and some methamphetamine in a pair of shoes.

Defendant waived a preliminary hearing on resulting charges, but moved to suppress the evidence.[2] The suppression hearing took place in a misdemeanor courtroom. Most of the proceedings were not reported. The judge approved a settled statement of the unreported portion of the officer's testimony. The record does not reflect the condition of the items searched or their precise location in the backseat. The officer had no memory of the style of the shoes.

After defendant's suppression motion was denied, he pleaded guilty to four misdemeanor counts.[3] The trial court suspended imposition of sentence and

---

[1]     The Attorney General does not attempt to justify the search of the purse, stating that no evidence derived therefrom was used to sustain charges against defendant. As the Attorney General notes, a syringe cap is not contraband, and defendant's trial motion did not identify the syringe cap in his list of evidence he sought to suppress.

[2]     Penal Code section 1538.5.

[3]     Driving under the influence of a drug or alcohol (Veh. Code, § 23152, subd. (a)), with a prior; being under the influence of a controlled substance (Health

*(footnote continued on next page)*

placed defendant on informal probation for three years on condition he serve 90 days in the county jail. Defendant appealed from the denial of his suppression motion.

The Court of Appeal reversed, holding that the search could not be justified on the basis of the front seat passenger's parole status. It articulated an extremely broad rule that defendant Schmitz, as the driver, "clearly had a reasonable expectation of privacy in his glove box, his console, his door pockets, his own seat, the backseat—indeed every part of his car except the front passenger seat where the parolee was sitting. . . . Nothing Schmitz did could reasonably have been viewed as ceding authority over his backseat to the parolee. The parolee had no right to open packages, eat food, or even read magazines he found in the backseat."**4**

---

*(footnote continued from previous page)*

& Saf. Code, § 11550, subd. (a)); unauthorized possession of a syringe (former Bus. & Prof. Code, § 4140, repealed by Stats. 2011, ch. 738, § 2); and child endangerment (Pen. Code, § 273a, subd. (b)). A charge of possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)) was dismissed prior to the suppression hearing.

**4** In the Court of Appeal, defendant also contended the evidence should have been suppressed as the product of an illegal detention by the officer. The court rejected this contention, and defendant does not renew it here.

Writing separately, Justices Werdegar and Liu urge that defendant failed to challenge the permissible scope of the parole search in the trial court, and thus did not create an adequate record to litigate that issue on appeal. (Conc. & dis. opn. of Werdegar, J., *post*, at pp. 2-4; conc. & dis. opn. of Liu, J., *post*, at p. 1.) Our colleagues would reverse the Court of Appeal on the ground that defendant forfeited the claim now before us. They urge that it is unnecessary to reach the merits of the Fourth Amendment question on which we granted review. (Conc. & dis. opn. of Werdegar, J., *post*, at pp. 3-4 & fn. 2; conc. & dis. opn. of Liu, J., *post*, at pp. 1, 18.) We respectfully find this argument unpersuasive.

It is the People's burden to justify a warrantless search. (*Vale v. Louisiana* (1970) 399 U.S. 30, 34; *People v. Johnson* (2006) 38 Cal.4th 717, 723 (*Johnson*);

*(footnote continued on next page)*

3

We reverse the judgment of the Court of Appeal and clarify the permissible scope of a vehicle search based on a passenger's parole status.

---

*(footnote continued from previous page)*

*People v. Williams* (1999) 20 Cal.4th 119, 127 (*Williams*).)  The defendant does have the burden to file a motion asserting the absence of a warrant and, if the prosecution offers a justification for the warrantless search or seizure, to present arguments as to why that justification is inadequate.  (*Williams, supra*, at p. 130.)  Here, defendant's written suppression motion challenged both his detention and the search of his vehicle.  He argued generally that the officer's conduct was not supported by a warrant, "particularized suspicion," or lawful consent, and that it was the People's burden to justify the warrantless search and seizure.  According to the settled statement, the officer testified at the suppression hearing that she searched the defendant's car based on the passenger's parole status.  Thereafter, in the reported portion of the hearing, both parties focused their brief oral argument on the detention issue.  The trial court denied defendant's motion in its entirety.

In *Williams* we held that the defendant's failure to orally argue a point he had raised in his written pleading did not forfeit the issue or otherwise excuse the gap in the prosecution's evidence on the facts of that case.  (*Williams, supra*, 20 Cal.4th at pp. 137-138.)  Whether this defendant forfeited his challenge to the parole search is not as clear cut as our colleagues suggest, particularly absent a verbatim transcript of a substantial portion of the suppression hearing.  What is clear is that the Attorney General nowhere raised the forfeiture issue in the Court of Appeal, in her petition for review here, or in her briefing before this court.  The Court of Appeal addressed the legality of the parole search after full briefing by the parties.  The Attorney General's petition for review asked:  "When conducting a search authorized by an automobile passenger's parole condition, can the police search those areas of the passenger compartment that reasonably appear subject to the parolee's access?"  All seven justices voted to grant review on this significant and recurring legal question.  Both parties have briefed the merits of the issue in this court and, as explained below, we find the record adequate to resolve it.  Accordingly we exercise our discretion to do so.  (See *People v. Brendlin* (2008) 45 Cal.4th 262, 267, fn. 1.)  To do otherwise would be unfair to the parties, particularly the defendant, who was not asked to address the forfeiture issue in briefing or at oral argument.  (See Gov. Code, § 68081.)

## II.  DISCUSSION

Challenges to the admissibility of evidence obtained by a police search and seizure are reviewed under federal constitutional standards.  (Cal. Const., art. I, § 24; *People v. Lomax* (2010) 49 Cal.4th 530, 564, fn. 11; *People v. Woods* (1999) 21 Cal.4th 668, 674 (*Woods*).)  A warrantless search is unreasonable under the Fourth Amendment unless it is conducted pursuant to one of the few narrowly drawn exceptions to the constitutional requirement of a warrant.  (U.S. Const., 4th Amend.; *Arizona v. Gant* (2009) 556 U.S. 332, 338 (*Gant*); *Woods*, *supra*, 21 Cal.4th at p. 674; *People v. Bravo* (1987) 43 Cal.3d 600, 609.)  California's parole search clause is one of those exceptions.  (*Samson v. California* (2006) 547 U.S. 843, 846, 850-857 (*Samson*).)

Under California statutory law, every inmate eligible for release on parole "is subject to search or seizure by a . . . parole officer or other peace officer at any time of the day or night, with or without a search warrant or with or without cause."  (Pen. Code, § 3067, subd. (b)(3).)  Upon release, the parolee is notified that "[y]ou and your residence and any property under your control may be searched without a warrant at any time by any agent of the Department of Corrections [and Rehabilitation] or any law enforcement officer."  (Cal. Code Regs., tit. 15, § 2511, subd. (b)(4); see also Cal. Code Regs., tit. 15, § 2356 [requiring the department staff to notify the prisoner of the conditions of parole before release].)  There is no dispute that the passenger was on parole and subject to the standard search clause.  The Attorney General defends the search solely on that basis.

When considering constitutional challenges to warrantless and suspicionless parole searches based on a search condition, courts weigh the privacy interests of the parolee against society's interest in preventing and detecting recidivism.  Both we and the United States Supreme Court have

5

concluded that such searches are reasonable, so long as the parolee's status is known to the officer and the search is not arbitrary, capricious, or harassing. (See *Samson, supra,* 547 U.S. at pp. 846, 850-856; *People v. Sanders* (2003) 31 Cal.4th 318, 332-334 (*Sanders*); *People v. Reyes* (1998) 19 Cal.4th 743, 750-754 (*Reyes*).) "[P]arolees . . . have severely diminished expectations of privacy by virtue of their status alone." (*Samson*, *supra*, 547 U.S. at p. 852.) "As a convicted felon still subject to the Department of Corrections, a parolee has conditional freedom— granted for the specific purpose of monitoring his transition from inmate to free citizen." (*Reyes*, *supra*, 19 Cal.4th at p. 752.) The state, by contrast, "has an ' "overwhelming interest" ' in supervising parolees because 'parolees . . . are more likely to commit future criminal offenses.' *Pennsylvania Bd. of Probation and Parole*, 524 U.S., at 365 (explaining that the interest in combating recidivism 'is the very premise behind the system of close parole supervision')." (*Samson*, *supra*, 547 U.S. at p. 853.) "The state has a duty not only to assess the efficacy of its rehabilitative efforts but to protect the public . . . ." (*Reyes*, *supra*, 19 Cal.4th at p. 752.) Accordingly, a parolee does not have a legitimate expectation of privacy that would prevent a properly conducted parole search. (*Samson*, *supra*, 547 U.S. at p. 852; *Reyes*, *supra*, 19 Cal.4th at p. 754.)

Different considerations are present, however, when a parole search affects the privacy interests of third parties. In the context of a residential search, we have expressed no doubt that " 'those who reside with [a person subject to a search condition] enjoy measurably greater privacy expectations in the eyes of society' " than those enjoyed by the parolee. (*Sanders*, *supra*, 31 Cal.4th at p. 329, quoting *People v. Robles* (2000) 23 Cal.4th 789, 798 (*Robles*).) Here, we consider the permissible scope of a parole search that infringes on the privacy of a third party driving a car with a parolee passenger. The facts here raise two distinct questions.

6

First, what is the permissible scope of the search of the car's interior?  Second, what is the permissible scope of a search of property located in the car?

We have encountered similar questions in the context of a residential search.  In *Woods*, *supra*, 21 Cal.4th 668, police officers searched a house based on the probation status of one of the residents.  We held that evidence found in the house's only bedroom was admissible against two other residents who were not probationers.  (*Id*. at pp. 672, 681-682.)  We observed that "[i]n California, probationers may validly consent in advance to warrantless searches in exchange for the opportunity to avoid service of a state prison term.  [Citations.]"  (*Id*. at p. 674.)[5]  Relying on the "common authority" theory of consent, we concluded that, if others live with a probationer, the shared areas of their residence may be searched based on the probationer's consent, given in advance by agreeing to a search condition.  (*Id*. at pp. 674-676, citing *Schneckloth v. Bustamonte* (1973) 412 U.S. 218 and *United States v. Matlock* (1974) 415 U.S. 164, 170.)[6]  We emphasized, however, that our holding would not "legitimize unreasonable searches with respect to nonprobationers who share residences with probationers.  In all cases, a search pursuant to a probation search clause may not exceed the scope of the particular clause relied upon.  [Citation.]  Nor may such a search be undertaken in a harassing or unreasonable manner.  [Citations.]  Moreover, officers generally may only search those portions of the residence they reasonably

_____

[5]    As will be discussed below (*post*, at pp. 11-13 & fn. 9), we have never relied on a consent rationale to uphold a *parole* search condition.

[6]    This court further held that an officer's reliance on the probation status of one of the residents as a pretext to secure evidence against the other residents did not render the search of the common area unconstitutional.  (*Woods*, *supra*, 21 Cal.4th at pp. 671-672.)

7

believe the probationer has complete or joint control over. [Citation.]" (*Woods*, *supra*, 21 Cal.4th at pp. 681-682.)

In *Robles*, *supra*, 23 Cal.4th 789, we reaffirmed that, if someone lives with a probationer, "common or shared areas of their residence may be searched by officers aware of an applicable search condition." (*Id*. at p. 798, citing *Woods*, *supra*, 21 Cal.4th 668, and *Russi v. Superior Court* (1973) 33 Cal.App.3d 160.) We further observed that nonprobationers "maintain normal expectations of privacy over their persons. In addition, they retain valid privacy expectations in residential areas subject to their exclusive access or control, so long as there is no basis for officers to reasonably believe the probationer has authority over those areas." (*Robles, supra*, at p. 798.) We found the search unreasonable as to the nonprobationer, Robles, because the officers were unaware that the other resident was on probation. A fortuitous subsequent discovery of a probation search clause could not be relied upon to justify the search. (*Id*. at pp. 798-800.)

In *Sanders*, *supra*, 31 Cal.4th 318, we considered a Fourth Amendment challenge to a warrantless search of a home occupied by two people, "one of whom was on parole and subject to a search condition of which the police were unaware at the time of the search." (*Id*. at p. 322.) Addressing the nonparolee's challenge to the search, we observed that the nonparolee "had a reduced expectation of privacy because she was living with a parolee subject to a search condition . . . ." (*Id*. at p. 330.) We concluded, however, that she " 'need not anticipate that officers with no knowledge of the probationer's existence or search condition may freely invade their residence in the absence of a warrant or exigent circumstances.' " (*Ibid*., quoting *Robles, supra*, 23 Cal.4th at p. 799.) In extending the holding of *Robles* to require that officers know of a resident's parole search condition before conducting the search, we declined to distinguish between probation and parole searches *for this purpose*, concluding that "the expectation of

8

privacy of cohabitants is the same whether the search condition is a condition of probation or parole."  (*Sanders*, *supra*, 31 Cal.4th at p. 330.)

### A.  The Officer's Search of the Backseat of the Car Was Reasonable

This court has not addressed the permissible scope of a vehicle search based on a passenger's parole status.  We begin with the premise, uncontested by either party, that Deputy Mihai engaged in a search by physically entering defendant's car to look for contraband and property related to the parolee.  (See *New York v. Class* (1986) 475 U.S. 106, 111, 114-115.)[7]  The burden is on the People to justify the warrantless search as reasonable.  (*Vale v. Louisiana, supra,* 399 U.S. at p. 34; *Johnson*, *supra*, 38 Cal.4th at p. 723; *Williams*, *supra*, 20 Cal.4th at p. 127.)

The Court of Appeal relied on the consent-based "common authority" standard employed in *Woods* to conclude that the permissible scope of the parole search was narrowly confined to the parolee's person and the seat he occupied.  It reasoned that only persons with " '*common or superior* authority' " over an area can authorize a search, and that "that rule means the police may 'only search those portions of the [property] they reasonably believe the probationer has *complete or joint control over*.' "  It observed that "there was no evidence that Schmitz, merely by allowing a parolee to ride as a passenger in his car, ceded to that parolee any authority over the car at all, let alone the authority to permit inspections of the vehicle's interior '*in his own right*.' "  Accordingly, it concluded that "[a] mere passenger in a vehicle, who claims neither a possessory nor property interest

---

[7]    Mihai did not testify that she saw incriminating evidence in plain view from where she stood outside of defendant's vehicle.  (See *Horton v. California* (1990) 496 U.S. 128, 136-137; *Texas v. Brown* (1983) 460 U.S. 730, 739-740 (plur. opn. of Rehnquist, J.).)

therein, lacks the 'common authority' over the vehicle which would allow him either to consent or object to its search."

The Court of Appeal's reliance on *Woods* led it astray. We conclude the rationale employed in *Woods*, justifying a search based on advance *consent* by a cohabitant probationer "with common or superior authority over the area to be searched" (*Woods*, *supra*, 21 Cal.4th at p. 675), is unworkable when applied to this parolee, who was a mere passenger in defendant's automobile.[8] There are significant distinctions between the residential probation search in *Woods*, and the search of defendant's car based on his passenger's parole status.

Homes and cars are afforded different levels of Fourth Amendment protection. "[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " (*Payton v. New York* (1980) 445 U.S. 573, 585.) There is good reason to limit a warrantless, suspicionless residential search to areas where an officer reasonably believes the parolee or probationer exercises "common authority." (*Woods, supra,* 21 Cal.4th at pp. 674-676; *United States v. Matlock, supra*, 415 U.S. at p. 171, fn. 7.) "The authority which justifies the third-party consent . . . rests . . . on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (*United States v. Matlock, supra*, 415 U.S. at p. 171, fn. 7.) The sanctity of the home demands

---

**8**      There may be circumstances that could demonstrate a parolee passenger is exercising common authority over a vehicle through joint ownership, lease, or physical possession, for example. Such facts are not present here. We offer no opinion on the permissible scope of such a search.

recognition that persons living with a probationer or parolee "retain valid privacy expectations in residential areas subject to their exclusive access or control, so long as there is no basis for officers to reasonably believe the probationer has authority over those areas." (*Robles, supra*, 23 Cal.4th at p. 798; accord, *Sanders*, *supra*, 31 Cal.4th at pp. 329-330.)

By contrast, "the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." (*South Dakota v. Opperman* (1976) 428 U.S. 364, 367, fn. omitted; accord, *Indianapolis v. Edmond* (2000) 531 U.S. 32, 54.) Both drivers and passengers have a reduced expectation of privacy in the interior of a car and its contents because cars " 'trave[l] public thoroughfares,' *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974), 'seldom serv[e] as . . . the repository of personal effects,' *ibid*., are subjected to police stop and examination to enforce 'pervasive' governmental controls '[a]s an everyday occurrence,' *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976), and, finally, are exposed to traffic accidents that may render all their contents open to public scrutiny." (*Wyoming v. Houghton* (1999) 526 U.S. 295, 303 (*Houghton*).) Accordingly, "warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not." (*South Dakota v. Opperman, supra*, at p. 367.)

The Court of Appeal also failed to consider that *Woods,* unlike this case, involved a probation search. Our previous cases have drawn a clear distinction between probation and parole with regard to consent. A probationer explicitly agrees to being placed on probation, often in exchange for an opportunity to avoid incarceration in state prison. Likewise, a probationer who is subject to a search clause has explicitly consented to that condition. (*Woods, supra*, 21 Cal.4th at p. 674; *People v. Bravo* (1987) 43 Cal.3d 600, 605-607; *People v. Mason* (1971) 5 Cal.3d 759, 764, disapproved on another ground in *People v. Lent* (1975)

11

15 Cal.3d 481, 486, fn. 1.)  By contrast, in parole cases we have not relied on the consent principle that naturally applies in probation.  In *Reyes* we explained that "under the Determinate Sentencing Act of 1976, parole is not a matter of choice.  The Board of Prison Terms must provide a period of parole; the prisoner must accept it." (*Reyes*, *supra*, 19 Cal.4th at p. 749, citing Pen. Code, § 3000 et seq.)[9] Finding a consent analysis inapt, we adopted a totality of the circumstances balancing test to evaluate the reasonableness of a warrantless and suspicionless parole search.  (*Reyes*, *supra*, at pp. 753-754; accord, *Samson, supra*, 547 U.S. at p. 848.)  This approach, unlike the consent exception to the warrant requirement, recognizes the state's compelling interest to supervise parolees and to ensure compliance with the terms of their release.   It also recognizes that "parolees have

---

[9]     In 1996, the Legislature enacted Penal Code section 3067.  At the time of defendant's release on parole, the statute provided that, for crimes committed on or after January 1, 1997, the inmate had to agree in writing to a mandatory search clause as a condition of parole.  (Pen. Code, § 3067, former subd. (a), & subd. (c), added by Stats. 1996, ch. 868, § 2, pp. 4656-4657.)  If the inmate did not agree, he or she was required to remain imprisoned and serve the remainder of the sentence without worktime credits.  (See Pen. Code, § 3067, former subd. (b); see also former Pen. Code, § 3060.5 [providing that "the parole authority shall revoke the parole of any prisoner who refuses to sign a parole agreement setting forth the general and any special conditions applicable to the parole . . . and shall order the prisoner returned to prison"].)  The statutes were amended in June 2012 to omit the requirement that the parolee expressly agree in writing to the search clause, and to omit the parolee's lack of agreement as a basis for denying or revoking parole.  (Stats. 2012, ch. 43, § 49.)  Before this change, one appellate court had indicated that a parolee's acceptance of a search condition under Penal Code section 3067, former subdivision (a) constituted consent.  (See *People v. Middleton* (2005) 131 Cal.App.4th 732, 739-740.)  The Attorney General, however, expressly disavows any reliance on a theory of advance consent to justify the search in this case.  Because we assess the reasonableness of the search without regard to an advance-consent theory, we need not resolve this question. (Cf. *Samson, supra*, 547 U.S. at p. 852, fn. 3.)

12

fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." (*Samson, supra*, at p. 850.)

"The touchstone of the Fourth Amendment is reasonableness . . . ." (*United States v. Knights* (2001) 534 U.S. 112, 118-119 (*Knights*).) "When faced with . . . diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." (*Illinois v. McArthur* (2001) 531 U.S. 326, 330; accord, *People v. Robinson* (2010) 47 Cal.4th 1104, 1120.)

Whether a search is reasonable within the meaning of the Fourth Amendment depends on the " 'totality of the circumstances.' " (*Samson*, *supra*, 547 U.S. at p. 848; *Ohio v. Robinette* (1996) 519 U.S. 33, 39.) This test includes an assessment of the degree to which a search promotes legitimate governmental interests, balanced against the degree to which it intrudes upon an individual's privacy. (*Samson, supra*, at p. 848; *Houghton, supra*, 526 U.S. at p. 300.) Both we and the United States Supreme Court have employed traditional standards of reasonableness to evaluate the constitutionality of warrantless vehicle searches[10] and parole searches.[11] Accordingly, we consider whether the officer's search here

---

[10] See *Houghton, supra*, 526 U.S. at pages 300-307 (officer with probable cause to search a car may conduct a warrantless search of all belongings of driver and passengers that are capable of concealing the object of the search); *New York v. Class, supra,* 475 U.S. at pages 116-118 (officer may conduct a warrantless search of vehicle to remove items on dashboard obscuring vehicle identification number); *South Dakota v. Opperman*, *supra*, 428 U.S. at pages 367-373 (officer may conduct a warrantless inventory search of impounded vehicle); *In re Arturo D.* (2002) 27 Cal.4th 60, 68 (officer may conduct a limited, warrantless search of vehicle incident to traffic stop for license or registration when driver fails to produce those documents).

[11] See *Samson, supra*, 547 U.S. at page 848 (parole search condition upheld); *Reyes, supra*, 19 Cal.4th at pages 750-754 (same); see also *Knights, supra,* 534 U.S. at pages 118-119 (probation search condition upheld).

13

was reasonable, with a "salient circumstance" being the presence of a parolee subject to a search condition. (*Knights, supra*, 534 U.S. at p. 118; accord, *Samson, supra*, 547 U.S. at p. 848; *Sanders, supra*, 31 Cal.4th at p. 333.)

We reject at the outset the Court of Appeal's suggestion that the interior of defendant's car was not subject to any modicum of search based on the passenger's status as a parolee subject to a search condition.[12] Emphasizing that defendant was not on parole, and that there was "no evidence [defendant] *knew* his passenger was a parolee," the Court of Appeal found that defendant "gave up none of his own expectation of privacy, nor of his authority to prevent the officer's search of the vehicle." However, " '[o]ur [inquiry] is not what the privacy expectations of particular defendants in particular situations may be . . . . Our [inquiry], in terms of the principles announced in *Katz* [*v. United States* (1967) 389 U.S. 347], is what expectations of privacy are constitutionally "justifiable" . . . .' " (*Hudson v. Palmer* (1984) 468 U.S. 517, 525, fn. 7, quoting *United States v. White* (1971) 401 U.S. 745, 751-752 (plurality opn. of White, J.).) Here, defendant knowingly allowed passengers to ride in his car, thereby opening its interior to them and allowing them to see and access some of its contents. (Cf. *United States v. Jacobsen* (1984) 466 U.S. 109, 117; *Smith v. Maryland* (1979) 442 U.S. 735, 743-744.) Once an officer learns of the passenger's parole status (see *Sanders, supra*, 31 Cal.4th at p. 330; *Robles, supra,* 23 Cal.4th at p. 799),[13] and informs the driver of it, the driver cannot reasonably expect to shield the interior of the car *completely* from any search aimed at uncovering criminal

---

[12]    Notably, defendant does not adopt this position in his briefing before us.
[13]    Because California law requires that all parolees be subject to warrantless and suspicionless searches as a condition of their release, an officer's knowledge of a parolee's status is equivalent to knowledge of the applicable search condition. (*People v. Middleton*, *supra*, 131 Cal.App.4th at pp. 739-740.)

14

activity by the parolee. However, the driver can reasonably expect that the scope of the search will be " ' strictly tied to and justified by ' " the circumstances authorizing it (*Terry v. Ohio* (1968) 392 U.S. 1, 19), and that the search will not be conducted in an arbitrary, capricious, or harassing manner (*Woods, supra*, 21 Cal.4th at p. 682; *Reyes, supra*, 19 Cal.4th at pp. 752-754; see also *Samson, supra*, 547 U.S. at p. 856).

The Court of Appeal's focus on defendant's ignorance of his passenger's parole status when admitting him to the car is misplaced. We have never suggested that a probation or parole search of a house would be unlawful unless a defendant knew his or her cohabitant was a probationer or a parolee. No good reason appears to create such a rule for vehicle searches. Because the primary purpose of the exclusionary rule is to deter unlawful police conduct, the operative question is whether *the officer* knew of the passenger's parole status before conducting the search. (See *Sanders, supra*, 31 Cal.4th at pp. 324, 332-335; *Robles, supra*, 23 Cal.4th at pp. 799-800; see also *id.* at p. 800 ["a knowledge-first requirement is appropriate to deter future police misconduct and to effectuate the Fourth Amendment's guarantee against unreasonable searches and seizures"].)

Turning to the scope of the search, our state statute specifies only that the parolee "is subject to search or seizure by a . . . parole officer or other peace officer at any time of the day or night, with or without a search warrant or with or without cause." (Pen. Code, § 3067, subd. (b)(3).) While that statute provides authority for the search, it does not purport to define its scope in any given case. Rather, the limits of a parole search flow from the nexus between the parolee and the area or items searched. How we define that nexus depends on the totality of the circumstances, and takes into account such factors as the nature of that area or item, how close and accessible the area or item is to the parolee, the privacy interests at stake, and the government's interest in conducting the search.

15

As noted, the state's interest in supervising parolees is substantial. (*Samson, supra*, 547 U.S. at p. 853.) Parolees " 'are more likely to commit future criminal offenses' " (*ibid*.) and pose "grave safety concerns that attend recidivism" (*id*. at p. 854).[14] Additionally, because of their conditional release into society, parolees have an even greater "incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal . . . ." (*Knights*, *supra,* 534 U.S. at p. 120 [discussing probationers]; accord, *Samson, supra*, at pp. 854-855 [the "incentive-to-conceal concern" applies with "even greater force" to parolees].)  Warrantless, suspicionless searches are a vital part of effective parole supervision (*Reyes, supra*, 19 Cal.4th at p. 752; *Samson*, *supra*, at p. 854), and are mandated in California as a condition of every parolee's release (Pen. Code, § 3067, subd. (b)(3); Cal. Code Regs., tit. 15, § 2511, subd. (b)(4)).

On the other side of the balance, as noted, a driver has a reduced expectation of privacy with regard to an automobile.  (*South Dakota v. Opperman, supra*, 428 U.S. at p. 368; *Cardwell v. Lewis* (1974) 417 U.S. 583, 590.)  A driver's expectation of privacy is further diminished when he allows others to ride in his car, thus ceding some measure of privacy to them.  (Cf. *United States v. Jacobsen, supra,* 466 U.S. at p. 117; *Smith v. Maryland, supra,* 442 U.S. at pp. 743-744; *Sanders, supra,* 31 Cal.4th at p. 330.)

The Court of Appeal placed the passenger parolee in a legal bubble and concluded that defendant retained a reasonable expectation of privacy in "every part of the car except the front passenger seat where the parolee was sitting."  In so

---

[14]    The truncated record here does not reflect an expression by Deputy Mihai of concern for her safety once her backup officer arrived and the occupants were removed from the car.  We do note, however, the Supreme Court's observation that traffic stops are "especially fraught with danger to police officers." (*Michigan v. Long* (1983) 463 U.S. 1032, 1047.)

holding, it artificially segmented the car's interior and improperly limited the permissible scope of a search strictly to the parolee's person and the seat he or she occupies. No authority supports such a circumscribed approach.

To the contrary, the law does not presume that a front seat passenger has nothing to do with items located elsewhere in the passenger compartment of a car. In *Maryland v. Pringle* (2003) 540 U.S. 366, a police officer conducting a routine traffic stop obtained the driver's consent to search the car. He located a large sum of cash in the glove box and five plastic baggies containing cocaine hidden behind the backseat armrest. Upon questioning, the driver and two passengers declined to say who owned the drugs or money. (*Id*. at pp. 368-369.) Observing that the baggies of cocaine were in an area "accessible" to all three passengers, the court found it "an entirely reasonable inference from these facts that any or all three of the occupants [including the front seat passenger] had knowledge of, and exercised dominion and control over, the cocaine," thus justifying their arrests. (*Id*. at p. 372.) Similarly, in *People v. Vermouth* (1971) 20 Cal.App.3d 746, police officers stopped a car for a traffic violation. The Court of Appeal held that the officers had probable cause to arrest both the passenger and the driver for possession of a billy club seen resting against the driver's door. (*Id*. at p. 756.)

Moreover, the Court of Appeal's rigid view does not reflect modern social conventions, which provide a framework for assessing whether an expectation of privacy is reasonable. (*Oliver v. United States* (1984) 466 U.S. 170, 178 & fn. 8; *Rakas v. Illinois* (1978) 439 U.S. 128, 143, fn. 12; cf. *Georgia v. Randolph* (2006) 547 U.S. 103, 111-112.) The vehicle here was a noncommercial five-passenger car. Typically, automobile occupants do not act as if they were confined in separate divided compartments, coats and other possessions piled on their laps, elbows clamped at their sides. A front seat passenger, even if only a casual acquaintance of the driver, will likely feel free to stow personal items in available

17

space at his or her feet, in the door pocket, or in the backseat, until they are needed or the journey ends. Even if the driver's personal preferences are otherwise, it is not reasonable to expect that the passengers will always adhere to them. The driver is not necessarily in a position to supervise his passengers at every moment, nor is he in a position to control their every move once they are in the car. As the *Houghton* court observed, an occupant of an automobile may hide contraband without the other occupants' knowledge or permission. (*Houghton, supra*, 526 U.S. at p. 305.) For these reasons, the permissible scope of a search is "not defined by the subjective intent of those asserting the rights." (*Hudson v. Palmer, supra,* 468 U.S. at p. 525, fn. 7.) Rather, a reasonable officer may take all of the circumstances into account when conducting a parole search of an automobile for property, contraband, or weapons associated with the parolee.[15]

In addition, a standard five-passenger automobile generally affords ready access to areas in both the front and back seats. (See *New York v. Belton* (1981) 453 U.S. 454, 460 (*Belton*), holding limited in part on another ground in *Gant,*

---

[15] Justice Liu postulates that a different etiquette may apply to a driver who picks up a rider in a casual carpool or volunteers to transport a group of parent chaperones on an elementary school field trip. (Conc. & dis. opn. of Liu, J., *post*, at pp. 2, 5-6.) Of course, those circumstances are not at play here. This officer encountered a driver with abscesses on his arms suggesting drug use, and a passenger on parole. Testimony at the suppression hearing established that defendant and the parolee had known each other for approximately three years at the time of the search. Accordingly, we have no occasion to consider what modern social conventions would govern, for example, a driver's decision to allow a stranger into his or her private vehicle for the benefit of gaining access to a carpool lane. (See conc. & dis. opn. of Liu, J., *post*, at p. 6.) Further, while it is true that this officer was not privy to the precise relationship between the parties, the Fourth Amendment permits the officer to "rel[y] on what [is] usual and place[s] no burden on the [officer] to eliminate the possibility of atypical arrangements, in the absence of reason to doubt that the regular scheme was in place." (*Georgia v. Randolph, supra*, 547 U.S. at p. 112.)

*supra,* 556 U.S. 332, 344-348.)  This fact is particularly significant given the Supreme Court's observation that parolees have a heightened incentive to conceal or quickly dispose of incriminating evidence.  (*Samson, supra*, 547 U.S. at pp. 854-855; accord, *Knights*, *supra,* 534 U.S. at p. 120.)  A parolee, more than an ordinary passenger, may be expected to conceal contraband or weapons in places other than on his person, well aware that his own privacy rights are severely limited.  Under the Court of Appeal's approach, a parolee passenger could frustrate a valid parole search simply by sitting in the front seat of the car and placing or discarding his belongings in the back.  Imposing such an artificially narrow rule frustrates the legitimate goals of parole.  "When balancing the competing interests, our determinations of 'reasonableness' under the Fourth Amendment must take account of [the] practical realities" facing the officer. (*Houghton, supra*, 526 U.S. at p. 306.)

Balancing these factors, we reject the Court of Appeal's holding.  Instead we hold that a vehicle search based on a passenger's parole status may extend beyond the parolee's person and the seat he or she occupies.  Such a search is not without limits, however.  The scope of the search is confined to those areas of the passenger compartment where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity.[16]  Within these limits, the officer need not articulate specific facts indicating that the parolee has *actually* placed property or contraband in a

---

[16]    The facts here do not involve a search of closed compartments of the car like the glove box, center console, or trunk, and we express no opinion on whether a search of such closed-off areas could be based solely on a passenger's parole status.  The reasonableness of such a search must necessarily take into account all the attendant circumstances, including the driver's legitimate expectation of privacy in those closed compartments, the passenger's proximity to them, and whether they were locked or otherwise secured.

19

particular location in the passenger compartment before searching that area. Such facts are not required because the parole search clause explicitly authorizes a search "without cause." (Pen. Code, § 3067, subd. (b)(3); see also *Reyes, supra*, 19 Cal.4th at pp. 753-754.)[17]

Applying this rule, we conclude that the officer's search of the backseat of defendant's car was reasonable. Defendant was driving an older model Oldsmobile or Buick. There was no evidence that the car was used for a commercial purpose or that it had any type of barrier (as might be found in a taxicab) dividing the front seats from the backseat. Nor would commonly held social conventions suggest to the officer that the passenger's movement was restricted only to the seat he occupied. (Cf. *Georgia v. Randolph*, *supra*, 547 U.S. at pp. 111-112.) Considering the layout of a standard five-passenger car, it was objectively reasonable for the officer to expect that this parolee could have stowed his personal property in the backseat, tossed items behind him, or reached back to place them in accessible areas upon encountering the police. Accordingly, under these circumstances, the parolee status of the front seat passenger justified a warrantless search of the backseat area where the chips bag and shoes were located.[18]

---

[17] In *Reyes*, we affirmed that a parole search may be reasonable even in the absence of particularized suspicion so long as the search is not arbitrary, capricious, or harassing. (*Reyes, supra*, 19 Cal.4th at pp. 753-754.) As we noted there, " 'although "some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure[,] . . . the Fourth Amendment imposes no irreducible requirement of such suspicion." ' " (*Id.* at p. 751, quoting *New Jersey v. T.L.O.* (1985) 469 U.S. 325, 342, fn. 8; accord, *Samson, supra*, 547 U.S. at pp. 846, 857; see also *In re Randy G.* (2001) 26 Cal.4th 556, 565.)

[18] In addition to the rule we adopt here, an officer is authorized to search a vehicle and its occupants based on legitimate and articulated officer safety concerns, under the guidelines set forth in previous cases. (See, e.g., *Arizona v.*

*(footnote continued on next page)*

20

Defendant would state the rule more restrictively. He contends that a search of an automobile based on a passenger's parole status is limited to the areas *immediately* accessible to the parolee. Defendant seems to invoke a limiting principle applicable to a search incident to an arrest. Such a search is limited to the area within the arrestee's " 'immediate control,' " meaning "the area from within which he might gain possession of a weapon or destructible evidence." (*Chimel v. California* (1969) 395 U.S. 752, 763 (*Chimel*).)

But that test undermines, rather than assists, defendant's position. In upholding a search of an automobile incident to arrest, the Supreme Court in *Belton, supra,* 453 U.S. 454, observed that "the relatively narrow compass of the passenger compartment of an automobile" is in fact "generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].' " (*Id*. at p. 460, quoting *Chimel, supra*, 395 U.S. at p. 763.) Accordingly, the court adopted a bright-line rule that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (*Belton, supra*, at p. 460, fns. omitted.)

This search was not incident to arrest, and we do not adopt a bright-line rule here. Nonetheless, *Belton*'s analysis is instructive. The narrow and relatively nonprivate nature of the passenger compartment, and law enforcement's need for a

*(footnote continued from previous page)*

*Johnson* (2009) 555 U.S. 323, 331-332 [permissible patdown of occupants based on reasonable suspicion that they may be armed and dangerous]; *New York v. Class*, *supra*, 475 U.S. at pp. 108, 114 [permissible seizure of a weapon protruding from under driver's seat]; *Michigan v. Long*, *supra*, 463 U.S. at pp. 1045-1050 [permissible search of passenger compartment of automobile based on reasonable suspicion that suspect is dangerous and may gain immediate control of weapon].)

workable rule to monitor parolees, justify our rejection of a rule that would require the officer to assess in each case the parolee's immediate grasping distance and limit the search to that area.[19]  Allowing a search of areas where, under the circumstances, the officer reasonably expects that the parolee could have placed or discarded items furthers the purposes of a warrantless parole search to facilitate close monitoring of the parolee's conduct and to deter the commission of crime. (See *Terry v. Ohio, supra*, 392 U.S. at p. 19 [the scope of the search must be commensurate with the rationale authorizing it].)

Justice Liu urges that our holding "defines the scope of a valid search in terms that exceed the scope of the parole search condition."  (Conc. & dis. opn. of Liu, J., *post*, at p. 5.)  Our colleague would hold that a properly conducted parole search is limited to "the parolee's person and to 'any property

---

[19]    In *Gant, supra*, 556 U.S. 332,  a divided Supreme Court rejected a sweeping interpretation of *Belton* that permitted automobile searches incident to arrest even after the arrestee had been safely secured away from the vehicle. (*Gant, supra*, at pp. 335, 341-347; *id*. at p. 354 (conc. opn. of Scalia, J.).)  Because concerns about officer safety and evidence destruction underlie this exception to the warrant requirement, the court concluded that a vehicle search incident to an arrest cannot be justified when these concerns are not implicated.  (*Id*. at pp. 335, 338.)  Accordingly, it held that the police may search the passenger compartment of an automobile incident to arrest only when (1) "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" (*id*. at p. 343) or (2) there is reason to believe that evidence of the offense for which the arrest was made might be found in the vehicle (*id*. at pp. 343-344, 351). A close reading of *Gant* confirms that, under these two circumstances, *Belton*'s holding with respect to the permissible scope of an automobile search incident to arrest remains intact.  (*People v. Nottoli* (2011) 199 Cal.App.4th 531, 555.)

There is no similar reason to limit a parole search to the area within the parolee's reach *at the moment of the search*.  For the reasons previously explained (see *ante*, at pp. 6, 16), an officer has a compelling interest in detecting criminal activity by a parolee regardless of whether the parolee has been safely removed from the car and secured.

22

under [the parolee's] control.' " (*Ibid.*, quoting Cal. Code Regs., tit. 15, § 2511, subd. (b)(4).)[20] He contends that the "available authority interprets 'control' more naturally and sensibly to mean not mere physical access but rather ownership, possession, or authority over the property searched." (Conc. & dis. opn. of Liu, J., *post*, at p. 9.)

We respectfully disagree with the limits Justice Liu seeks to draw from the relevant authority. As noted, our parole statute provides that every parolee is subject to warrantless and suspicionless parole searches. (Pen. Code, § 3067, subd. (b)(3).) It does not purport to define the limits of a properly conducted parole search. Nor is it correct to say that the scope of the officer's search is strictly tied to the literal wording of the notification given to the parolee upon release. (Conc. & dis. opn. of Liu, J., *post*, at p. 5, citing Cal. Code Regs., tit. 15, § 2511, subd. (b)(4) [parolee must be notified that "[y]ou and your residence and any property under your control" are subject to warrantless search].) While we have so held for a probation search clause based on consent (*Woods, supra*, 21 Cal.4th at pp. 674-675, 682; accord, *Walter v. United States* (1980) 447 U.S. 649, 656), as we have explained, our rule here does not derive from a theory of advance consent by either the parolee or the driver. Rather, we assess the reasonableness of this search based on the totality of the circumstances, with the passenger's parole status, applicable search condition, and presence in a car all being salient circumstances. (*Samson, supra*, 547 U.S. at p. 848; *Knights, supra*, 534 U.S. at p. 118; *Sanders, supra*, 31 Cal.4th at p. 333.) Finally, the authority Justice Liu cites for his interpretation of "control" amounts to six Court of Appeal decisions (conc. & dis. opn. of Liu, J. at pp. 9-10), five of which involve searches of residences, not

---

[20] We discuss in further detail below the limits on a parole search of items of property located in an automobile. (*Post*, at pp. 25-26.)

automobiles, and predate the most recent pronouncements from this court and the United States Supreme Court on the validity of parole searches (see *ante*, at pp. 5-6).[21]

Justice Liu's "control" test proves problematic when applied to a search of the interior of an automobile. He posits that "Officer Mihai had lawful authority to search the parolee's person and the area immediately adjacent to the parolee. Absent unusual circumstances, a further search of the passenger compartment would have required Officer Mihai to make a reasonable determination of what areas or property in the car were under the parolee's control." (Conc. & dis. opn. of Liu, J., at p. 15.) It would seem that a passenger's act of tossing contraband behind him into the backseat would amount to an exercise of "control" over that area. If so, would our colleague require the officer to witness such conduct? To so require would demand an articulation of cause, a requirement expressly at odds with the search condition.

Justice Liu urges that his approach is consistent with the holdings in *Maryland v. Pringle*, *supra*, 540 U.S. 366 and *People v. Vermouth*, *supra*, 20 Cal.App.3d 746. (Conc. & dis. opn. of Liu, J., at p. 15.) While we consider those cases illustrative, they are distinguishable in that they involved probable cause to arrest, while this case involves a suspicionless search. Justice Liu further suggests that the officer could have determined the relationship among the car's occupants or sought an admission about who owned property located in the car. We have already rejected the Court of Appeal's holding that would require evidence of common authority over the car or admissions of property ownership before

---

[21] We discuss *People v. Baker* (2008) 164 Cal.App.4th 1152 (*Baker*), the lone Court of Appeal decision to confront a parole search of an automobile, *post*, at pages 26-27.

24

searching beyond the seat the parolee passenger physically occupied. Justice Liu states that he would not endorse the Court of Appeal's rule. (Conc. & dis. opn. of Liu, J., *post*, at p. 3.) Yet, in the final analysis his approach does just that.

In sum, because "cause" is not required, an officer does not have to articulate facts demonstrating that the parolee actually placed personal items or discarded contraband in the open areas of the passenger compartment. That is not to say, as Justice Liu asserts, that an officer can *always* search the open areas of the passenger compartment of a standard five-passenger car. (Conc. & dis. opn. of Liu, J., *post*, at pp. 2, 6.) Rather, an officer may search only those areas where he or she reasonably expects, in light of all the circumstances, that the parolee *could have* placed personal items or discarded contraband. Thus, a parole search of an automobile based on a passenger's parole status does have reasonable limits. To the extent he argues otherwise, Justice Liu criticizes a rule of his own articulation, not the rule we adopt here.[22]

### B. The Officer's Search of the Chips Bag and Shoes Was Reasonable

We now turn to the officer's search of the chips bag and the pair of shoes located in the backseat. (See *ante*, at p. 2 & fn. 1.) Because there is no testimony in the record that the contraband found inside these items was in plain view, we

---

[22] We do not hold, categorically or otherwise, that an officer may always search "the back seat, the area behind the back seat headrests, the back seat foot areas, any door pockets in the front or back on both sides of the car, and the floor areas under both front seats . . . ." (Conc. & dis. opn. of Liu, J., *post*, at p. 2.) Nor does the rule we announce today, taken to its logical conclusion, necessarily authorize a search of "closed-off areas" like the glove box or center console. (*Id.* at p. 11.) Justice Liu questions why such areas would be exempt. (*Ibid.*) The simple answer is that that is the way the common law evolves, incrementally and on a case-by-case basis. A more nuanced answer is that, applying a totality of the circumstances approach, the facts in another case may show that it would be unreasonable to expect that a parolee had access to those areas.

treat the officer's conduct as a search. (See *United States v. Ross* (1982) 456 U.S. 798, 822-823 ["the Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view"].)

The United States Supreme Court has recognized that, like the automobile itself, property transported inside the automobile is subject to a reduced expectation of privacy. (*Houghton, supra*, 526 U.S. at p. 303.) As noted, California's parole search clause authorizes warrantless and suspicionless parole searches. (Pen. Code, § 3067, subd. (b)(3); see also *Reyes, supra*, 19 Cal.4th at pp. 753-754.) Taking these factors into account, along with the "the relatively narrow compass of the passenger compartment of an automobile" (*Belton, supra,* 453 U.S. at p. 460), we hold that an officer conducting a search of a vehicle's passenger compartment based on a passenger's parole status may search items of personal property if the officer reasonably believes that the parolee owns the items or has the ability to exert control over them.[23]

Defendant argues that the officer's search of the shoes and chips bag was unlawful because "by virtue of their very nature and location, [these] items in the back seat . . . were either obviously feminine" or clearly belonged to the woman passenger in the backseat, rather than the male parolee in the front. He relies for this point on *Baker*, *supra*, 164 Cal.App.4th 1152, but his argument lacks merit.

In *Baker*, an officer stopped a car for speeding. The male driver told the officer he was on parole. Baker, the only passenger, had a purse at her feet. A search of the purse revealed methamphetamine. The Court of Appeal held the

---

[23] We use the term reasonable belief in the same manner as the high court. The determination "must 'be judged against an objective standard: would the facts available to the officer at the moment . . . "warrant a man of reasonable caution in the [requisite] belief" ' . . . ." (*Illinois v. Rodriguez* (1990) 497 U.S. 177, 188; accord, *Sanders*, *supra*, 31 Cal.4th at p. 334.)

search unreasonable. It observed that "a purse has been recognized as an inherently private repository for personal items" (*Baker*, *supra*, 164 Cal.App.4th at p. 1159) and that "[h]ere, there is nothing to overcome the obvious presumption that the purse belonged to the sole female occupant of the vehicle who was not subject to a parole-condition search" (*id*. at p. 1160). The purse sat at the female passenger's feet and the officer recounted no conduct, such as furtive movements, by the driver towards the purse. (*Id*. at pp. 1156-1157.) The Court of Appeal concluded that, "on these facts . . . there could be no reasonable suspicion that the purse belonged to the driver, that the driver exercised control or possession of the purse, or that the purse contained anything belonging to the driver. [Citation.]" (*Id*. at p. 1159.)

Turning first to the chips bag, it is plainly distinguishable from the woman's purse at issue in *Baker*. A chips bag is not an "inherently private repository for personal items" (*Baker, supra*, 164 Cal.App.4th at p. 1159), and has no distinct characteristics that would identify it as belonging to any particular person. Unlike a purse, which is not generally shared by two or more people, a chips bag is not so carefully guarded. Occupants of a car commonly share food like a bag of chips during a journey. Once the bag's contents are consumed, it becomes mere trash, or, in some instances, a receptacle for trash. Any occupant of the car would be free to commandeer an empty chips bag to discard or conceal items, without objection by the others. Further, while not dispositive, neither nonparolee occupant of the car claimed exclusive control over the chips bag at the time of the search. Considering these circumstances, it was objectively reasonable

for the officer to believe that the parolee was able to reach back and conceal contraband inside the chips bag.**24**

The shoes present a closer question. The record does not reveal the shoes' owner or whether the style of the shoes was gender specific. (See *ante*, at p. 2.) It is the People's burden to present facts justifying a warrantless search. (*Vale v. Louisiana, supra,* 399 U.S. at p. 34; *Johnson, supra,* 38 Cal.4th at pp. 723, 726; *Williams, supra,* 20 Cal.4th at p. 127.) We conclude, however, that under the circumstances of this case, the ambiguous record is not fatal to the People's position.

The shoes were located in the backseat. Regardless of actual ownership, it was objectively reasonable for the officer to believe that the parolee was able to reach back to hide contraband inside the shoes. In this respect, an open shoe differs markedly from a purse, which is likely to be more closely monitored by its owner or otherwise secured.

Additionally, any further evidence regarding the style of the shoes would have only undercut defendant's position. Had such evidence shown that the shoes were a man's style, it would have strengthened the People's position that they were properly searched as the property of the male parolee. In this regard, the shoes' location in the backseat was equally accessible to the defendant driver and his male passenger, both seated in the front. Without an express claim of ownership, which was not asserted here, a pair of men's shoes is not likely to have

---

**24**    Consistent with our analysis above, we do not impose any further requirement that the officer articulate specific facts indicating that the parolee actually exercised control over the item of property in this manner. (See *ante*, at pp. 19-20 & fn. 17.)

28

distinct characteristics identifying it as the property of the male driver, rather than the male passenger.

Conversely, had further evidence shown that the shoes were a woman's style or diminutive in size, it would be reasonable to conclude, as defendant has argued, that they belonged to the female passenger (or her small child) seated in the back. But that fact would have necessarily undermined a claim that the officer's search infringed on the driver's reasonable expectation of privacy. As the high court has explained, to claim Fourth Amendment protection, defendant must demonstrate that he *personally* has an expectation of privacy in the property searched. (*Minnesota v. Carter* (1998) 525 U.S. 83, 88.)[25] " 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.' " (*Rakas v. Illinois*, *supra*, 439 U.S. at pp. 133-134, quoting *Alderman v. United States* (1969) 394 U.S. 165, 174.) As it stands, the Attorney General has not argued that defendant lacked a Fourth Amendment right to challenge the search of the shoes. We conclude that the ambiguous record inured to defendant's benefit. We further conclude, based on the factors identified above, that the officer's search of the shoes was reasonable.

Because the officer could search the chips bag and shoes located in the backseat of defendant's car based on the passenger's parole status and applicable search condition, the trial court properly denied defendant's motion to suppress evidence.

---

[25]  There was no evidence of a familial relationship between defendant and the female passenger or her child that would allow him to claim an ownership interest in their possessions.

## III.  DISPOSITION

The judgment of the Court of Appeal is reversed.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**CHIN, J.**

**CONCURRING AND DISSENTING OPINION BY WERDEGAR, J.**

I concur in the judgment reversing the Court of Appeal's decision, but I respectfully dissent from the reasons set forth by the majority. I would find that defendant Schmitz has failed to preserve for appeal the question whether the parole search was valid.

At issue in this case is whether a deputy sheriff's warrantless search of defendant's car violated his constitutional right to be free of unreasonable searches under the Fourth Amendment to the United States Constitution. "[T]he most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' 'The burden is on those seeking the exemption to show the need for it.' " (*Coolidge v. New Hampshire* (1971) 403 U.S. 443, 454-455, fns. omitted.) The rule is the same under the state Constitution: "It is axiomatic . . . that warrantless searches are per se unreasonable under the California and federal Constitutions with only a few carefully circumscribed exceptions, and that the People have the burden of proving that any search without a warrant comes within one of those exceptions." (*People v. Laiwa* (1983) 34 Cal.3d 711, 725.)

1

The procedure for raising a challenge to a warrantless search is well-established: "[W]hen defendants move to suppress evidence, they must set forth the factual and legal bases for the motion, but they satisfy that obligation, at least in the first instance, by making a prima facie showing that the police acted without a warrant. The prosecution then has the burden of proving some justification for the warrantless search or seizure, after which, defendants can respond by pointing out any inadequacies in that justification." (*People v. Williams* (1999) 20 Cal.4th 119, 136 (*Williams*).)

In his motion to suppress, defendant challenged both his detention and the ensuing warrantless search of his car. In opposition to the motion, the district attorney asserted the detention was lawful. The trial court ruled in favor of the district attorney. While the district attorney's opposition mentioned in passing the front seat passenger's parole condition, defendant did not respond, and the record discloses neither any argument by the parties concerning the significance or the permissible scope of the passenger's parole search condition, nor any ruling on the point by the trial court.[1] Although the burden is on the district attorney to justify a

[1] The suppression hearing began on May 21, 2008, and was not recorded or transcribed. A settled statement of that day's proceedings indicates Deputy Mihai testified she "conducted a search of the car based on the passenger's parole status." The settled statement does not reflect the legal arguments, if any, made by counsel, so there is no record of whether the parties discussed the scope of the search permitted by the passenger's parole search condition. "To preserve such a point for review on appeal, a defendant must of course provide an adequate record." (*People v. Gordon* (1990) 50 Cal.3d 1223, 1250.)

The hearing continued on June 23, 2008; this time a reporter was present and a transcript was prepared. Following the taking of evidence, the only issue the parties addressed in their arguments to the court was whether defendant had been detained and, if so, whether Deputy Mihai had sufficient cause to detain. Neither side mentioned the scope of the search permitted by the passenger's parole search condition.

warrantless search, here the district attorney did so, to the satisfaction of the trial court. If defendant thought otherwise, the burden was then on him to assert his objection and make a record adequate to preserve it for appellate review (see *People v. Gordon*, *supra*, 50 Cal.3d at p. 1250), even while the People bear the ultimate burden of justifying the search (see *Williams*, *supra*, 20 Cal.4th 119, 127). "Defendants who do not give the prosecution sufficient notice of [the] inadequacies [of its justification for a challenged search] cannot raise the issue on appeal. '[T]he scope of issues upon review must be limited to those raised during argument . . . . This is an elemental matter of fairness in giving each of the parties an opportunity adequately to litigate the facts and inferences relating to the adverse party's contentions.' [Citation.]" (*Id.*, at p 136.)

Because defendant failed in the trial court to challenge the applicability of the passenger's parole search condition or the permissible scope of the warrantless search, he must be held to have forfeited the issue. For this reason alone, I concur in the majority's decision to reverse the judgment of the Court of Appeal, which reversed the trial court's denial of the suppression motion.

Defendant's apparent forfeiture, which became evident only after we had granted review, would have weighed heavily against a grant regardless of any party's preference for a decision interpreting the Fourth Amendment. "As a prudential matter, we routinely decline to address constitutional questions when it is unnecessary to reach them." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 17, fn. 13.)[2] This

---

[2] "Principles of judicial restraint counsel that we not reach out to decide gratuitously constitutional questions of first impression. Sound jurisprudence dictates that such issues be decided only in the context of cases and controversies actually raising the issue." (*People v. Bennett* (1998) 17 Cal.4th 373, 393 (conc.

*(footnote continued on next page)*

3

case illustrates the prudential rule's wisdom, as defendant's failure to raise the parole search issue in the trial court, in response to the People's effort to justify the search (see *Williams*, *supra*, 20 Cal.4th, 119, 136), prevented the development of a factual record that might have obviated any perceived need to revisit the permissible scope of warrantless searches.  Unfortunately, the majority reaches out to decide the Fourth Amendment issue, proclaiming categorically that "the Constitution permits a [warrantless] search of those areas of the passenger compartment [of a third party's car] where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity."  (Maj. opn., *ante*, p. 1.)  Given the majority's choice to speak to the issue, I do no further offense to our prudential rule by noting my agreement with Justice Liu that the majority's reasoning is unpersuasive.

**WERDEGAR, J.**

**I CONCUR:**

**KENNARD, J.**

---

*(footnote continued from previous page)*

opn. of Werdegar, J.); see *People v. Reyes* (1998) 19 Cal.4th 743, 767 (conc. & dis. opn. by Werdegar, J.) [same].)

**CONCURRING AND DISSENTING OPINION BY LIU, J.**

As Justice Werdegar observes, "defendant failed in the trial court to challenge the applicability of the passenger's parole search condition or the permissible scope of the warrantless search." (*Ante*, at p. 3 (conc. & dis. opn. of Werdegar, J.).) As a result, the record in this case is very limited. We know that the police officer conducted a search of the car based on the front seat passenger's parole status. But we do not know what the officer asked, learned, or believed in the course of the search, even though such facts bear critically on whether the officer reasonably believed the areas and items searched were under the parolee's control. Today's opinion effectively deems such facts irrelevant to the lawfulness of the search and, in so doing, adopts a novel Fourth Amendment rule that may be broader than necessary to resolve the legality of what actually happened in this case. Because judicial restraint counsels against deciding constitutional questions when it is unnecessary to do so (see *Santa Clara County Local Transp. Auth. v. Guardino* (1995) 11 Cal.4th 220, 230), I agree with Justice Werdegar that the prudent course here is to reverse the Court of Appeal based on defendant's apparent forfeiture in the trial court. However, because the court has reached out to announce a far-reaching constitutional rule, I write further to explain why today's decision is unpersuasive on the merits.

The court holds that a police officer who discovers that the passenger in the front seat of a car is on parole may search "those areas of the passenger

1

compartment where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity." (Maj. opn., *ante*, at pp. 1, 19.) The court describes a search pursuant to this standard as "confined" and "not without limits." (*Id.* at p. 19.) But the logic of today's holding appears to authorize a police officer, simply upon learning that the front seat passenger is on parole, to search *all open areas of the passenger compartment of a standard five-passenger car*. These areas include the back seat, the area behind the back seat headrests, the back seat foot areas, any door pockets in the front or back on both sides of the car, and the floor areas under both front seats — for these are all places where an officer may reasonably expect "the parolee could have stowed personal belongings or discarded items when aware of police activity." (*Id.* at pp. 1, 19.)

This holding is unduly broad. After today, a commuter who picks up a rider in a casual carpool on the way to work and is stopped for speeding may be subject to a search of all open areas in the car's passenger compartment if the police officer learns that the rider is on parole. The same goes for a driver who volunteers to drive a group of parent chaperones on an elementary school field trip. And the same goes for a person who agrees to pick up a friend of a friend on the way to the movies. I am not sure what societal baseline the court deems legally relevant when it suggests these arrangements are " 'atypical' " or not " 'usual.' " (Maj. opn., *ante*, at p. 18, fn. 15.) Indeed, it seems an unduly cramped reading of the Fourth Amendment to say that the only sure way a driver in these everyday situations can protect himself or herself from the possibility of a warrantless, suspicionless search of all open areas of the passenger compartment is to ask, before letting a rider into the car: "By the way, are you on parole?" Yet that is apparently now the rule in California.

Further, the court holds that if an officer encounters personal property in the course of searching the car's passenger compartment, the property also may be searched "if the officer reasonably believes that the parolee owns those items or has the ability to exert control over them." (Maj. opn., *ante*, at p. 1.) This too is exceedingly broad. To say that an officer may search any property he or she reasonably believes to be under the parolee's control is to adhere faithfully to the parole search condition. (See Cal. Code Regs., tit. 15, § 2511, subd. (b)(4) [parolee upon release shall be notified that "[y]ou and your residence and any property under your control may be searched without a warrant at any time . . . ."].) To say that an officer may search any property that he or she reasonably believes to be within the parolee's "ability to exert control" is to authorize the officer to search virtually any property found in the passenger compartment.

I would not hold, as the Court of Appeal seemed to imply, that a lawful parole search may never go beyond the front passenger seat when a police officer knows the passenger in that seat is a parolee. But nor would I hold, as the court does today, that a lawful parole search may always go beyond the front passenger seat. Instead, I would hold, as precedent dictates, that the reasonableness of a search beyond the front passenger seat depends on the " 'totality of the circumstances' " in each case. (*Samson v. California* (2006) 547 U.S. 843, 848 (*Samson*).) Accordingly, I respectfully disagree with the broad rule adopted by the court in derogation of the Fourth Amendment's protections.

## I.

It is well established that California parolees "have severely diminished expectations of privacy by virtue of their status alone." (*Samson*, *supra*, 547 U.S. at p. 852.) As today's opinion notes: "Under California statutory law, every inmate eligible for release on parole 'is subject to search or seizure by a . . . parole officer or other peace officer at any time of the day or night, with or without a

3

search warrant or with or without cause.' (Pen. Code, § 3067, subd. (b)(3).) Upon release, the parolee is notified that '[y]ou and your residence and any property under your control may be searched without a warrant at any time by any agent of the Department of Corrections [and Rehabilitation] or any law enforcement officer.' (Cal. Code Regs., tit. 15, § 2511, subd. (b)(4); see also Cal. Code Regs., tit. 15, § 2356 [requiring the department staff to notify the prisoner of the conditions of parole prior to release].)" (Maj. opn., *ante*, at p. 5.) The parole search condition furthers the state's " ' "overwhelming interest" ' in supervising parolees because 'parolees . . . are more likely to commit future criminal offenses' " as well as the state's "interests in reducing recidivism and thereby promoting reintegration and positive citizenship among . . . parolees." (*Samson*, *supra*, 547 U.S. at p. 853.)

Although parolees have "substantially diminished expectation[s] of privacy" (*Samson*, *supra*, 547 U.S. at p. 855), our cases have been careful to delimit the proper scope of a warrantless, suspicionless parole search where such a search implicates the privacy interests of third parties. In the context of a residential search, we have said that "the expectation of privacy of cohabitants is the same whether the search condition is a condition of probation or parole." (*People v. Sanders* (2003) 31 Cal.4th 318, 330.) The cases involving persons who are not on probation or parole living with a person who is (see maj. opn., *ante*, at pp. 7–9) make clear that "common or shared areas of their residence may be searched by officers aware of an applicable search condition." (*People v. Robles* (2000) 23 Cal.4th 789, 798 (*Robles*).) At the same time, we have "emphasized" that "a search pursuant to a probation search clause may not exceed the scope of the particular clause relied upon. [Citation.] Nor may such a search be undertaken in a harassing or unreasonable manner. [Citations.] Moreover, officers generally may only search those portions of the residence they reasonably believe the

4

probationer has complete or joint control over. [Citation.]" (*People v. Woods* (1999) 21 Cal.4th 668, 681–682 (*Woods*); *see Robles*, at p. 798 [nonprobationers "retain valid privacy expectations in residential areas subject to their exclusive access or control, so long as there is no basis for officers to reasonably believed the probationer has authority over those areas"].)

The search in the present case implicates the privacy interests of a driver whose car carried a passenger who was on parole. As the court notes, the legality of a warrantless parole search is not based on consent. (Maj. opn., *ante*, at p. 12.) In California, the parole search condition is specified by regulation. It provides that a parole search may extend to the parolee's person and to "any property under [the parolee's] control." (Cal. Code Regs., tit. 15, § 2511, subd. (b)(4).) In upholding the parole search at issue here, today's opinion defines the scope of a valid search in terms that exceed the scope of the parole search condition. Instead of focusing on what property is under the parolee's control, the court expands the scope of a parole search, first, by authorizing a police officer to search any "areas of the passenger compartment where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity" and, second, by authorizing the officer to search items of "personal property located in those areas if the officer reasonably believes that the parolee . . . has the ability to exert control over them." (Maj. opn., *ante*, at p. 1.) The upshot is that an officer is permitted to search all open areas of the car's passenger compartment and virtually any property located in those areas, simply upon ascertaining that the front seat passenger is a parolee.

The court says its holding reflects "commonly held social conventions" (maj. opn., *ante*, at p. 20) concerning the places in a car where "[a] front seat passenger, even if only a casual acquaintance of the driver, will likely feel free to stow personal items." (*Id.* at p. 17.) I suspect many law-abiding citizens who

5

drive or ride in cars will be surprised to learn that the areas under the "control" of a front seat passenger invariably extend to anywhere the passenger "could have stowed personal belongings or discarded items when aware of police activity" (*id.* at p. 1), including the back seat, the area behind the back seat headrests, the back seat foot areas, any door pockets in the front or back on both sides of the car, and the floor areas under both front seats. For example, the etiquette of a causal carpool for commuters may call for riders in the front passenger seat to place belongings on the floor at their feet or in their laps, but not in the back seat or anywhere else unless permission is asked and given. Five coworkers driving to lunch in a five-passenger car may understand that they must keep their possessions next to them and not elsewhere in the vehicle. But a driver who picks up a friend at the airport may expect that the passenger will place a suitcase on the back seat or in the trunk of the automobile. As these examples suggest, it is questionable to posit — as the court does without empirical or other authority — what social conventions in an automobile are "commonly held," "usual," or "typical." (See *id.* at pp. 18, fn. 15, 21.)

Because social conventions vary depending on the situation, the issue of whether a car's back seat or items located there are "property under [the parolee's] control" (Cal. Code Regs., tit. 15, § 2511, subd. (b)(4)) must be decided on the basis of the totality of the circumstances in each case. That is a straightforward application of settled law. As the high court stated in *Ohio v. Robinette* (1996) 519 U.S. 33, 39: "We have long held that the 'touchstone of the Fourth Amendment is reasonableness.' [Citation.] Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances. [¶] In applying this test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." (Accord, *Samson*, *supra*, 547 U.S. at p. 848 [" 'under our general Fourth Amendment approach' we 'examin[e]

6

the totality of the circumstances' to determine whether a search is reasonable within the meaning of the Fourth Amendment"]; *U.S. v. Knights* (2001) 534 U.S. 112, 118 ["we conclude that the search of Knights was reasonable under our general Fourth Amendment approach of 'examining the totality of the circumstances' [citation]"]; *People v. Robinson* (2010) 47 Cal.4th 1104, 1120 [" 'As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a government search is "reasonableness." ' [Citation.] [¶] 'Reasonableness' is 'measured in objective terms by examining the totality of the circumstances . . . .' "].)

Although today's opinion purports to examine the totality of the circumstances (maj. opn., *ante*, at pp. 13–14), it is clear that the court does so at a wholesale level rather on the facts of this particular case. The court notes that Officer Mihai "observed that [defendant's] arms were covered with abscesses, which she associated with drug use." (Maj. opn., *ante*, at p. 2; see *id.* at p. 18, fn. 15.) But the court does not explain how this fact is relevant to the scope of a lawful parole search where the front seat passenger, not defendant, was the parolee. The court also notes that "[t]estimony at the suppression hearing established that defendant and the parolee had known each other for approximately three years at the time of the search." (*Ibid.*) But nothing in the record indicates that this fact was known to Officer Mihai at the time of the search. Indeed, the record before us contains no facts indicating what areas or property in the car Officer Mihai reasonably believed to be under the parolee's control.

Given the deficiencies in the record, the court upholds Officer Mihai's search of the back seat and the property found there on the basis of general considerations rather than facts specific to this case. Those considerations include the "general[]" characteristics and layout of a standard, non-commercial, five-passenger car (maj. opn., *ante*, at pp. 18, 20), the "[t]ypical[]" behavior of

7

occupants in a standard five-passenger car according to "modern social conventions" (*id.* at pp. 17–18), a general statement of "the state's interest in supervising parolees" (*id.* at p. 16), and a general statement of a driver's "reduced expectation of privacy with regard to an automobile" especially "when he allows others to ride in his car" (*ibid.*). Because this is what the court understands the "totality of the circumstances" to mean, there is no real significance to the limiting phrases in the court's statement of its holding: "Considering the layout of a standard five-passenger car, it was objectively reasonable for the officer to expect that *this parolee* could have stowed his personal property in the back seat, tossed items behind him, or reached back to place them in accessible areas upon encountering the police. Accordingly, *under these circumstances*, the parolee status of the front seat passenger justified a warrantless search of the backseat area where the chips bag and shoes were located." (*Id.* at pp. 20–21, italics added.) How does it matter that the present case involved "this parolee" "under these circumstances" when today's opinion authorizes a search of the same breadth with respect to *any* parolee riding in the front passenger seat of *any* standard five-passenger car?

Moreover, the court authorizes a parole search not just of "property under [the parolee's] control" (Cal. Code Regs., tit. 15, § 2511, subd. (b)(4)), but of property within the parolee's "ability to exert control" (maj. opn., *ante*, at pp. 1, 26). This is a subtle but important difference that significantly expands the permissible scope of a parole search. It may be true, as a matter of sheer physicality, that a parolee has the "ability to exert control" over any unlocked container within the passenger compartment. But it is an odd definition of "control" to say that any item of property in which a parolee might potentially discard or conceal contraband is property under the parolee's "control." Apart from a single case that glancingly construed property under a parolee's control to

8

encompass portions of a house "to which [the parolee] had access" (*People v. LaJocies* (1981) 119 Cal.App.3d 947, 955), I am aware of no authority — and the court cites none — that supports today's expansive and unusual interpretation of "control" as that term is used in the parole search condition.

The available authority interprets "control" more naturally and sensibly to mean not mere physical access but rather ownership, possession, or authority over the property searched. For example, in *People v. Baker* (2008) 164 Cal.App.4th 1152, the male driver of a car stopped for speeding was on parole. The female defendant, Baker, was the front seat passenger, and her purse was on the floor at her feet. Upon discovering that the driver was on parole, the officer ordered the occupants out of the car. "Baker did so without taking her purse and without asserting ownership of the purse." (*Id.* at p. 1156.) The officer searched the vehicle and found drugs in Baker's purse. The Court of Appeal held the search unlawful on the ground that "there was no reasonable basis to believe the purse belonged to anyone other than the sole female passenger." (*Id.* at p. 1160.) The court reached this conclusion even though Baker did not claim ownership of the purse and even though the parolee who drove the car could have easily stowed contraband in the purse.

In *People v. Veronica* (1980) 107 Cal.App.3d 906, the court similarly suppressed contraband found in a purse during a parole search of a male parolee's residence. The court explained: "We do not, of course, suggest that simply because a garment or container is clearly designed for a person other than the parolee, it may never be searched under the parolee's prerelease consent. The particular circumstances may indicate that the object is, in fact, one of the parolee's own effects or, at least, jointly possessed by him and another. In this case, however, there was simply nothing to overcome the obvious presumption that the purse was hers, not his." (*Id.* at p. 909; cf. *People v. Boyd* (1990) 224

9

Cal.App.3d 736, 749–751 (*Boyd*) [upholding search of a handbag where
" 'articulable facts' " supported a rational inference that the handbag was owned
or controlled by a parolee].)

In *People v. Montoya* (1981) 114 Cal.App.3d 556, the court suppressed
drugs found in a pair of jeans during a parole search of a residence. The
circumstances indicated that the jeans belonged to one of two female guests, one
of whom was on parole. The court held the search unlawful on the ground that the
officer failed to determine "who owned the jeans before searching them" when "he
had no more reason to believe [the jeans] belonged to [the parolee] rather than to
appellant." (*Id.* at p. 562.) A number of probation search cases similarly focus on
the reasonableness of an officer's belief as to who owned or possessed the area or
item searched. (See, e.g., *People v. Tidiago* (1981) 123 Cal.App.3d 301, 308
(*Tidiago*) [finding substantial evidence that "it was unreasonable for officers to
believe that the [searched] residence was occupied or owned by respondent"];
*People v. Alders* (1978) 87 Cal.App.3d 313, 317–318 [invalidating search of "a
distinctly female coat" because "there was no reason to suppose [the coat] was
jointly shared by [the female defendant] and [the male probationer].)

The cases above indicate that "search conditions should be literally
construed in order to protect the rights of both probationers/parolees and
nonprobationers/nonparolees who associate with the individual subject to the
particular search condition." (*Tidiago*, *supra*, 123 Cal.App.3d at p. 306.) The
cases also demonstrate that whether an officer reasonably believed an item of
property is under a parolee's "control" within the meaning of the parole search
condition must be determined case by case based on indicia of ownership,
authority, or possession, not mere physical access. By focusing the inquiry in this
way, the cases give due regard to the fact that property that does not belong to the
parolee likely belongs to someone else. To equate "control" with "ability to exert

10

control," as the court does today, eviscerates any limit on the scope of a parole search as applied to the open areas of a car's passenger compartment, notwithstanding the privacy interests of third parties.

Because this rule cannot be correct when followed to its logical conclusion, the court drops a footnote that purports to leave undecided whether a search of "closed-off areas" such as "the glove box, center console, or trunk" can "be based solely on a passenger's parole status." (Maj. opn., *ante*, at p. 19, fn. 16.) But why should such closed-off areas be exempt (at least for now) from the rule announced by the court today? After all, it seems entirely plausible that a front seat passenger who seeks to hide contraband from an approaching officer would put it in the glove box or center console, both of which are areas within the parolee's "ability to exert control" and areas where the parolee "could have stowed personal belongings or discarded items when aware of police activity." (*Id.* at p. 1; see, e.g., *People v. Chavers* (1983) 33 Cal.3d 462, 466 [firearm found in glove compartment]; *People v. Walker* (1969) 273 Cal.App.2d 720, 723 [two firearms found in glove compartment]; *People v. Prochnau* (1967) 257 Cal.App.2d 22, 25–26 [two firearms found in glove compartment of car driven by parolee]; *People v. Allen* (1967) 254 Cal.App.2d 597, 602 [drugs found in glove compartment].)

The court declines to follow its own reasoning to this obvious conclusion on the ground that "[t]he reasonableness of such a search must necessarily take into account all the attendant circumstances, including the driver's legitimate expectation of privacy in those closed compartments, the passenger's proximity to them, and whether they were locked or otherwise secured." (Maj. opn., *ante*, at p. 19, fn. 16.) That is exactly right. But why shouldn't the reasonableness of searching the back seat or other parts of a car's passenger compartment likewise turn on such contextual factors? There is no reason to evaluate the reasonableness of searches of closed compartments through an analysis that differs from the

11

analysis used to evaluate searches of other parts of a car. The same analysis applies: "we 'examin[e] the totality of the circumstances' to determine whether a search is reasonable within the meaning of the Fourth Amendment." (*Samson*, *supra*, 547 U.S. at p. 848.)

The court notes that "a driver has a reduced expectation of privacy with regard to an automobile." (Maj. opn., *ante*, at p. 16.) That is true, but the automobile search cases serve only to highlight how (literally) unprecedented today's opinion is. This is not a case involving an inventory search of an impounded vehicle (*South Dakota v. Opperman* (1976) 428 U.S. 364), a search incident to arrest (*New York v. Belton* (1981) 453 U.S. 454), a protective search for weapons based on specific, articulable facts indicating that a suspect is dangerous (*Michigan v. Long* (1983) 463 U.S. 1032), or a search for a vehicle identification number, license, registration, or other information that a driver is legally obligated to disclose (*New York v. Class* (1986) 475 U.S. 106; *In re Arturo D.* (2002) 27 Cal.4th 60). This is not a case where the police found contraband in plain view. (Maj. opn., *ante*, at p. 25.) And this is not a case where the police had probable cause to believe that the car or the belongings or containers within it contained evidence or contraband. (*Wyoming v. Houghton* (1999) 526 U.S. 295; *California v. Acevedo* (1991) 500 U.S. 565.) This case involves a suspicionless, warrantless search of the passenger compartment based solely on the police officer's knowledge that the front seat passenger was on parole. The automobile search cases have never hinted, much less held, that this kind of search is valid under the Fourth Amendment. Instead, the automobile search cases, while premised on a reduced expectation of privacy, recognize that "[a] citizen does not surrender all the protections of the Fourth Amendment by entering an automobile." (*Class*, *supra*, 475 U.S. at p. 112.)

12

In sum, because the driver and other passengers in a car retain a legitimate if diminished privacy interest, it is important to properly delimit the scope of a lawful parole search when the front seat passenger is a parolee. The court cites no authority for construing the term "control" in the parole search condition (Cal. Code Regs., tit. 15, § 2511, subd. (b)(4)) to mean the mere "ability to exert control." By contrast, there is ample precedent suggesting that "property under [the parolee's] control" (*ibid.*) is most sensibly read to mean property over which the parolee appears to have authority, possession, or ownership from the perspective of a reasonable police officer. This latter reading, applied to the circumstances of each case, is what distinguishes the proper scope of a parole search from an unlawful intrusion on someone else's privacy.

## II.

The court cites *Maryland v. Pringle* (2003) 540 U.S. 366 (*Pringle*) and *People v. Vermouth* (1971) 20 Cal.App.3d 746 (*Vermouth*) for the proposition that "the law does not presume that a front seat passenger has nothing to do with items located elsewhere in the passenger compartment of a car." (Maj. opn., *ante*, at p. 17.) That is true, but equally important — and contrary to today's holding — *Pringle* and *Vermouth* show that whether a police officer reasonably believes there is a relationship between a front seat passenger and items elsewhere in the passenger compartment depends on the totality of the circumstances in each case.

In *Pringle*, a police officer stopped a car for speeding and obtained the driver's consent to search the car. The officer found a roll of cash amounting to $763 in the glove compartment and five plastic baggies of cocaine behind the back seat armrest. The officer asked the three occupants of the car about the ownership of the drugs and money. When none of the car's occupants claimed ownership, the officer arrested all three. Pringle, who was the front seat passenger, argued that the officer lacked probable cause to arrest him. In upholding the arrest, the

13

high court noted that the cocaine behind the back seat armrest was "accessible to all three men." (*Pringle*, *supra*, 540 U.S. at p. 372.) But the high court further observed that the rolled-up cash was "in the glove compartment directly in front of Pringle" (*ibid.*), that "[u]pon questioning, the three men failed to offer any information with respect to the ownership of the cocaine or the money" (*ibid.*), and that "[t]he quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him" (*id.* at p. 373). Based on these facts, and not the mere accessibility of the cocaine, the high court found it "an entirely reasonable inference . . . that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine." (*Id.* at p. 372.)

In *Vermouth*, the police stopped a vehicle at 3:30 a.m. for having a defective rear light. During the stop, the police questioned the two male occupants of the car and obtained consent to search the car and trunk. The search turned up, among other things, a five-inch pocket knife sticking out between the instrument panel and tape-playing machine, a billy club resting against the driver's door, and a pair of wire strippers and a small paring knife from the back seat area. (*Vermouth*, *supra*, 20 Cal.App.3d at pp. 750–751.) Inside the trunk, the police found "an electronic unit or part of a stereo, a small speaker, and a tool which at one end had a tire lug wrench and at the other a prying edge. The prying section had fresh, long scrape marks on it." (*Id.* at p. 751.) The police arrested both men for burglary and unlawful possession of a billy club. Although the driver had claimed ownership of the billy club during the stop, the Court of Appeal held that the police had probable cause to also arrest the passenger for possession of the billy club because the facts gave rise to an inference that "there was an alliance between [the passenger and the driver], either defensive or offensive." (*Id.* at

14

p. 756.)  The reasonableness of arresting the passenger for possession of the billy club turned on the "alliance" between the two men as inferred from the totality of the circumstances, not on the mere accessibility of the billy club to the passenger.

*Pringle* and *Vermouth* thus follow the settled principle that the reasonableness of police conduct under the Fourth Amendment must be determined based on the facts of each case.  We should follow the same approach.  As those cases demonstrate, a police officer in the ordinary conduct of a lawful automobile stop has many ways to determine what areas or items of property in a car are within a passenger's control.  Requiring each case to be decided on its own facts would not place an undue burden on law enforcement.

In the present case, Officer Mihai had lawful authority to search the parolee's person and the area immediately adjacent to the parolee.  Absent unusual circumstances, a further search of the passenger compartment would have required Officer Mihai to make a reasonable determination of what areas or property in the car were under the parolee's control.  Officer Mihai could have done this by asking a few simple questions of the driver, the parolee, or the other passengers.  For example, "does that chips bag belong to any of you?"  If the parolee said yes, then it would have been subject to search.  If no one claimed the chips bag — a scenario with some likelihood, since the chips bag contained contraband — then Officer Mihai could have lawfully searched it because she would have had a good faith belief that the search would invade no one's privacy.  Upon discovering the contraband, she would have been justified in arresting the occupants of the car (see *Pringle*, *supra*, 540 U.S. at p. 372) and searching the rest of the car for additional contraband.  Even if a passenger other than the parolee claimed the chips bag, Officer Mihai could have asked whether the chips had been shared with the parolee.  As to any such question, the officer need "not be bound by the reply in the face of overwhelming evidence of its falsity." (*Boyd*, *supra*, 224 Cal.App.3d

15

at p. 749.) The officer could have taken into account the relationship among the car's occupants, the demeanor of the individuals questioned, and any other verbal or observable indicators of what areas or property in the car were under the parolee's control.

In sum, there are many ways that Officer Mihai could have developed a reasonable belief that the chips bag was under the parolee's control and thus within the scope of a parole search. Contrary to what the court suggests (maj. opn., *ante*, at p. 24), my approach would not require Officer Mihai to have witnessed the front seat passenger tossing contraband into the back seat area. It requires only that an officer have a reasonable belief that the area or item searched is owned, controlled, or possessed by the parolee. And the reasonableness of an officer's belief will depend on the totality of the circumstances in each case.

In adopting a novel categorical rule instead of the case-by-case approach dictated by precedent, the court appears motivated by "law enforcement's need for a workable rule to monitor parolees." (Maj. opn., *ante*, at pp. 21–22.) But the court places artificial limits on its own theory. For example, the court limits its ruling to a noncommercial, standard five-passenger car, apparently leaving open the permissible scope of a parole search involving sport utility vehicles or passenger vans, even though in those vehicles no less than in a five-passenger car, "[t]he driver is not necessarily in a position to supervise his passengers at every moment, nor is he in a position to control their every move once they are in the car" and "an occupant of an automobile may hide contraband without the other occupants' knowledge or permission." (*Id.* at p. 18.) Moreover, as noted, the court declines to apply its ruling to "closed compartments" (*id.* at p. 19, fn. 16), even though such compartments are places where a parolee may readily stow or discard evidence or contraband.

16

Further, if there is any logic to the court's exception for closed compartments like the glove box or center console, it would seem also to exempt closed containers found in the car. But whether a container is open or closed can itself be problematic. In the present case, the limited record states only that two syringes were found in "a bag of chips" in the back seat of the car. It is not clear whether this bag of chips should be treated as an open or closed container. The record does not reveal whether the bag was wide open, partially open, flattened or clipped at the top, or otherwise sealed. If "it was objectively reasonable for the officer to believe that the parolee was able to reach back and conceal contraband inside the chips bag" (maj. opn., *ante*, at pp. 27–28), then what about a shoebox whose cover is partially off? Or a backpack whose zipper is partially open?

The stock response is to say that these concerns are not presented on the facts of this case and that we can decide such issues when they arise. (Maj. opn., *ante*, at p. 19, fn. 16, p. 25, fn. 22.) Of course, there is nothing wrong with that response insofar as precedent dictates that reasonableness under the Fourth Amendment requires case-by-case analysis. But if that is the response, then it is all the more inexplicable why the court arbitrarily cordons off some cases, but apparently not others, from the usual fact-specific inquiry.

Finally, it cannot be said that today's opinion has the virtue of bringing certainty to situations where there previously was none. Before today, there was no uncertainty for many law-abiding citizens who would, for any number of innocuous or even virtuous reasons, occasionally or regularly give a ride to, or ride with, a stranger or mere acquaintance. Under "commonly held social conventions" (maj. opn., *ante*, at p. 20), those citizens had no reason to think that a front seat passenger invariably would have "control" over the open areas of a car's passenger compartment. They had no reason to think that the passenger compartment or items of property located in it would be subject to a suspicionless,

17

warrantless search simply because the front seat passenger turned out to be a parolee.

After today, we must all be more wary of the company we keep when we drive or ride in a car, lest we surrender our legitimate expectations of privacy. Although Fourth Amendment doctrine is built on cases involving guilty people, it is important to remember that "the 'reasonable person' test presupposes an *innocent* person." (*Florida v. Bostick* (1991) 501 U.S. 429, 438.) Just as "[m]any law-abiding citizens might choose not to open their homes to probationers if doing so were to result in the validation of arbitrary police action" (*Robles*, *supra*, 23 Cal.4th at p. 799), so too many law-abiding citizens might decline to spare the air, to help a person in need, or to otherwise be a good Samaritan because doing so may result in a suspicionless invasion of their privacy.

For the reasons above, I join the court in reversing the judgment of the Court of Appeal but respectfully disagree with the erosion of Fourth Amendment protections worked by today's opinion.


LIU, J.


18

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Schmitz

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 187 Cal.App.4th 722
**Rehearing Granted**

_____

**Opinion No.** S186707
**Date Filed:** December 3, 2012

_____

**Court:** Superior
**County:** Orange
**Judge:** James Howard Poole

_____

**Counsel:**

William D. Farber, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton, Steven T. Oetting, Emily R. Hanks and Theodore M. Cropley, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

William D. Farber
369-B Third Street, #164
San Rafael, CA  94901
(415) 472-7279

Theodore M. Cropley
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-3196